To the second case this morning, Sweatt v. Union Pacific Railroad Company. Just wait a minute, counsel, until the people leave. May it please the court, my name is John Bischoff and I represent the appellant, plaintiff Ronald Sweatt. Before the court there are three major issues that are on appeal. One, dealing with the Federal Employees Liability Act case that Mr. Sweatt had filed, and the statute of limitations issue that the court below determined that it was expired at the time that he filed this complaint. The other issue is the race and age discrimination case regarding the security officer position that he was applying for with the Union Pacific. And probably most importantly, the issue on whether or not the procedures that were followed by the lower court run afoul of Rule 83 of the Federal Rules of Civil Procedure. That is the summary judgment practice that the lower court had unilaterally placed out there that really seems to conflict with the local Rule 56.1. The first issue on the statute of limitations, this is a repetitive trauma case. Mr. Sweatt claimed that he injured his shoulder and he had bilateral carpal tunnel syndrome. The lower court said that because he was feeling these pains while he was working, that he should have brought this case within three years when he first started feeling this, which was in May of 2009. He should have brought it in May of 2012. Mr. Sweatt is a track man. Heavy, heavy work. Moving ties, moving rail, doing all this. He just thought that because of his age, 56 years of age, that you feel the pain when you're doing this kind of work. Case law is clear that if you think that you've just got sore muscles, you really aren't on notice that you've injured yourself at work. When he went to the doctor in December of 2009, Dr. Coates, Dr. Coates says, you've got a problem with your shoulder and you've got bilateral carpal tunnel. He went to the doctor because it was getting worse, but he did what he was supposed to do. I think he acted diligently. He went to the doctor and somehow it was related to work. I think it's interesting. Even before June of 2009, wasn't he describing his shoulder pain as unbearable and he had to get assistance from others whenever he used the claw bar or something like that so that he couldn't do it without help? For that particular activity, but it was intermittent. There was other activities that he could certainly do. It was not something that was constant. It's just when it got gradually more severe, then he said, this is not probably just sore muscles. I probably should do something about it. We're talking about an individual that has a lower than normal standard as far as the vocational testing that he took to get the new job. He's not the brightest star. It seems to be disingenuous for the railroad to deny surgery when he applied for the railroad to okay his surgery. They're saying it's not work-related. How is he supposed to know that it's work-related? That's the main issue on the statute of limitations issue. The other issue is when he was applying for the security officer position. Somehow they said that he lied at his interview. They fill out what they call a personal history statement. In the personal history statement, there's a caption that says arrest. It doesn't ask about arrest. It says, have you ever been convicted of a misdemeanor or felony? He rightfully answered no. In that personal history statement that he fills out, there's a caveat in there. It says a conviction may not disqualify you, but a false statement will. He did neither. He did not make a false statement in this personal history statement. Where he ran afoul was when he was interviewed by the special agent that was doing the background investigation of Mr. Sweat. They asked him, have you ever been arrested for a felony or misdemeanor? He just filled out this form that asked about a conviction. He was confused. After the fourth time, when the special agent gave him a little hint, say, this happened in Homewood Flossmark. Oh, that. That was just a misunderstanding. It was a disturbance that a girlfriend brought against him, and it was thrown out of court. Now, should he have known that that was an arrest immediately? This happened 15 years before the interview. And when you look at the testimony of Kalinowski, who is the chief police officer for the Union Pacific, for that region, asking him would this be arrest or would that be arrest, he's all over the place. He's not really clear what really is an arrest. And the other thing about Mr. Kalinowski, when he was deposed, he said when if someone said that they never had a citation for a seatbelt citation, he said, if I were interviewing him, I would ask him a different way so that I know that the person is trying to hide something or the person is confused. They did not do that for Mr. Sweat. Now, they hired 19 people in five years as security officers. Most of them were Caucasian. A couple of them filled out the personal history statement saying that they never were convicted of a felony or misdemeanor. I mean, they wrote that down. By the form itself, because they wrote it down that they weren't, they shouldn't even be allowed to have the job. But they were hired anyway. Mr. Sweat was confused. And then when they gave him a little more information, he said, oh, yeah, that was thrown out of court. Does he know the difference between a conviction and an arrest? He knows that the incident occurred and he wasn't trying to hide it from anybody. But yet they hired the two Caucasians that did not put that down in the personal history statement but hired them anyway. The third issue on the lower court's application of the summary judgment practice forces the non-moving party to agree on uncontested issues of material fact without seeing what the brief is and cannot file any additional statement of facts. And if you balk at it, the court may impose sanctions on the party that's not going along with this routine. So the non-moving party is at extreme disadvantage, not knowing what the brief is and has to join in on these joint statement of facts. I understand you don't get to see the brief, but this rule of Judge Ellis requires the moving party to advise the opposing party in a short letter, two or three pages, of the basis of the motion, including relevant legal authority. I got a page and a paragraph, Your Honor. It actually would fit the definition of a brief, even though it's not the formal brief they filed. So that's got to tell you the heart of it. Was there anything different between the letter that you got in terms of the theories of the railroad and the brief they ultimately filed? Well, they were general theories, so I didn't know how these particular facts fit in. The page and the paragraph is a lot different than the 20, 30-page brief that was filed. How so? I don't see that explained in your brief, that you were caught by surprise by any of the issues. Well, the problem with the – I just don't see – I understand it's a peculiar procedure. I just don't see how your client was hurt by it. Well, I, last minute, added some additional facts, and fortunately, counsel didn't object to it. The judge let those in, right? But never referred to them in the opinion. Also, the judge refers to the fact that my client was charged with two counts of battery. They didn't know that until after they did discovery and after the lawsuit was filed. And the court looks at that, and perhaps that was like, well, he was charged with two counts of battery. He should have known that he was arrested. Probably was never even told to him. He doesn't remember that. So they're basing their firing of him or not giving him the position based on information that they got after they told him that he doesn't have the job. The other issue is that because of the fact that – Wasn't the basis the fact that he didn't concede in the first instance on the form? No, he – You're right. I understand there was an arrest. He filled out the form correctly because the form, even though it says arrest, it only asks for conviction. The interview, I should have said, the interview. The interview. He did not get it correctly there. Right. But Kalinowski, who's the chief police officer for the UP in this region, said, I would ask a different way so that I'm sure that the person was lying to me, hiding something, rather than confused. And that's what they did with these other people who had filled out the form and said they were never convicted of a felony or misdemeanor. And then it turns out that, at the interview, that they were. And they still offered them the job. Anything else? I think there's nothing further from us at this point. All right. Thank you. Good morning. May it please the Court. Brody Dawson on behalf of the defendant, Union Pacific Railroad. Turning first to the statute of limitations issue here. Here, the record evidence is clear that the district court correctly entered judgment in Union Pacific's favor because plaintiff testified unequivocally to three key facts. First, plaintiff testified in the summer of 2009 he was experiencing pain in his shoulder and hands. Second, plaintiff testified in the summer of 2009 he equated the pain in his shoulder with the work activities he was doing, specifically working with the claw bar. And three, by the summer of 2009, plaintiff associated the pain in his hands with his work activities. Based on these three critical facts, this Court's holding in Freeze v. Chicago Northwestern controls this case and dictates the discovery rule bars plaintiff's claim. Counsel, could you give your voice up a little bit? I apologize, Your Honor. Yes. Looking to the discovery rule, it is clear that in order to grant plaintiff the relief requested, this Court would have to overturn its holding in Freeze and the 25 years of precedent established by that case. In Freeze, this Court stated that the discovery rule provides that when an injury occurs due to continuous exposure over a period of time, the cause of action accrues when a reasonable person would be on notice both of the injury and its cause. Here, plaintiff's unequivocal testimony establishes that he was on notice and a reasonable person would have been noticed of the injury and its potential cause no later than the summer of 2009 as plaintiff himself conceded that by May of 2009 he was experiencing the pain with his hands and his shoulders when performing his work activities. There is nothing in the record that says that this pain was intermittent or that it dissipated. From May of 2009 and on, plaintiff was experiencing this pain and he acknowledges it that he associated it with his work. Based on that evidence, which is not disputed at all, the statute of limitations accrued in June of 2009 and plaintiff had a duty to investigate its cause and file his claim before November 30, 2009. Every railroader that does that kind of hard work has some pain, some aches, some soreness, what have you. Your argument with respect to the shoulder seems pretty solid to me where he talks about it being unbearable and they needed to get help to do the ordinary things he has to do his work. But with regard to the hands, his testimony is that he'd go home and take aspirin or something like that and go back to work the next day, things would be fine. And he doesn't get even evaluated about his hands until something like November? That is correct, Your Honor. A couple answers to your question. But then even in November there's no indication that he was given a diagnosis that it was a work-related injury. Your Honor, first, a medical diagnosis is not required. This court was crystal clear and free that a medical diagnosis is not required. What is required is that a reasonable person would have the facts necessary to put them on notice. Here, plaintiff was not complaining of mild discomfort in his hands that then would go away. What plaintiff testified to is that he was experiencing pain in his hands when he was doing his work activities. That pain would come back every day when he was at work. He would go home on the weekends, it would go away, and then as soon as he came back to work, it would start again. But unlike the shoulder situation, it wasn't where he couldn't use a particular tool. He had to have help to use it. He just had the hurt, the pain. He could still do his day-to-day jobs. Correct. He was able to still do his work. But his symptoms manifested in the summer of 2009 that he was experiencing the pain every time he was performing his duties. And it's at that point that the symptoms manifest that he has a duty to then investigate the cause. This court was very clear in Freeze and then continuing on in Tolson that a plaintiff cannot toll the statute of limitations simply by waiting around for a medical diagnosis. And here, by November 19th of 2009, plaintiff did seek medical care relative to his hands. And the nurse practitioner's note indicated the plaintiff was complaining of pain in his hands since May of 2009, that he used vibratory tools at work, and that he may have carpal tunnel syndrome. What is required in order to find that the statute of limitations has accrued is that a reasonable person would be unnoticed, both of their symptoms and the potential cause. Here, plaintiff's unequivocal testimony is that by the summer of 2009, he was experiencing symptoms in his hands and shoulder, that he associated it with his work, and that he had no other cause that he could attribute it to. Just like the plaintiff in Freeze, we have those same facts here, plus more, because plaintiff himself, in this case, admits that he associated his pain with work. In Freeze, plaintiff did not associate his pain with his work. He simply admitted that when he was at work, that was when the hearing loss or the ringing in his ears would occur. And then when he'd come home on the weekends, it would go away. That's exactly what we have here. Plaintiff would come to work, he experienced the pain in his hands and shoulders, it was only on the weekends when he wasn't working that it dissipated, and then when he came back, it started up again. Not only do we have the exact factual scenario we had in Freeze, but on top of that here, we have the fact that plaintiff himself admits that in the summer of 2009, so temporarily, he was associating his pain with the work he was doing. The arguments forward by plaintiffs have all been rejected. So the first argument the plaintiff makes to you is that it wasn't until he received a medical diagnosis from Dr. Coates that his statute of limitations time started running. That is contrary to the law established by this court in Freeze, and it's what a reasonable person would believe. The second argument that plaintiff makes is that it was continuing to progress, and therefore, he cannot have the statute of limitations run. Again, that argument was rejected by this court in Freeze. Once the injury has progressed to a point where the plaintiff is on notice of their symptoms, it's at that moment that the cause of action accrues. And here, by virtue of plaintiff's own unequivocal testimony, by the summer of 2009, he was on notice of those symptoms and it had progressed to a point where he had a duty to investigate. The other argument the plaintiff makes, and as Your Honor pointed out, is that it's normal muscle soreness. That's the exact argument that the plaintiff in Tolson made trying to distinguish way Freeze because she knew she had a problem with her argument there. And what the court said in Tolson is that arguing that normal wear and tear or muscle soreness is akin to asking this court to adopt an actual knowledge standard. Muscle soreness or pain caused from work is a characterization of the symptoms. What is important is that plaintiff was experiencing symptoms and he associated those symptoms with his work. By the summer of 2009, plaintiff was experiencing symptoms in his hands and shoulders. He associated those symptoms with the work he was doing at Lake Street, and there is not a shred of evidence in this record that those symptoms ever dissipated. Based on that unequivocal testimony, the district court correctly ruled that the discovery rule barred plaintiff's claims. To speak to plaintiff's second issue, the discrimination claims, here there is no evidence in the record that Union Pacific's proffered reason for disqualifying him from consideration for the security officer position on truthfulness was a pretext for discrimination. Plaintiff's own testimony is fatal to his claim because he admits that this was all a misunderstanding. When he was asked, is there any reason that you have to support your claim that you were discriminated against based on your age or race, his answer was, quote, it's a possibility. When I asked him, was there anything anybody said to you that makes you believe you were discriminated against, he said no. What plaintiff has to prove in order to get you a jury on the discrimination claim is that Union Pacific's proffered reason for disqualifying him was a lie, used to cover up discriminatory animus. There is nothing in the record that would allow the district court or a jury to conclude that Mr. Kalinowski and Mr. Finger's explanation for why they disqualified him from consideration, the fact that he answered no four times when asked whether he ever had been arrested, that that was a cover-up for some sort of discriminatory animus. Here, to correct something that plaintiff said, Mr. Sweat and no other candidate ever filled out a form that said, no, I've never been arrested. There's nothing in the record to state that. What happens during the process is Mr. Sweat is interviewed in Omaha for the position. Throughout that interview, he was asked a question, have you ever been arrested? And as Mr. Finger testified, he said no. He then was interviewed by Agent Weller and was asked on three to four separate occasions, have you ever been arrested? He said no. Based on that, Union Pacific determined that Mr. Sweat was untruthful in his responses, and that was a reasonable determination to make. And there is nothing in the record that would allow plaintiff to get to a jury on this issue of pretext because plaintiff himself can't point this court to any evidence that Union Pacific had a discriminatory animus based on either his age or race. There's been no link made between any of the conduct of Union Pacific and plaintiff's age or race. And for those reasons, the district court correctly concluded that plaintiff's claims should not proceed on. Finally, plaintiff's third argument relative to the district court's summary judgment procedure, that argument is not properly before this court. Plaintiff failed to raise the issue at the district court level. There is no record on the issue, and as a result, Union Pacific is prevented from putting any evidence in the record to defend against the unsubstantiated claims made in the briefs. Here, plaintiff has prevented Union Pacific from putting forward evidence that would allow it to rebut the claims made by plaintiff about how the district court procedure works. Nevertheless, even looking at how the procedure operates, it is clear that there is nothing inconsistent with the process. What the process requires, as Your Honor pointed out, is that counsel send to plaintiff a letter identifying the arguments that would be made in the brief. However, it goes one step further, and after that letter is sent, then the parties have to meet and confer. So not only is the letter sent, but then Mr. Bishop and myself have to get together and go through the letter and the case law together, and then see if I still will proceed with summary judgment. Even if, though, this court finds that the summary judgment procedure is inconsistent, as Your Honor pointed out, there is no harm to plaintiff. Here, plaintiff was allowed to file additional facts, which the district court gave him the opportunity to file, and contrary to what he said, the district court actually cited to one of those additional facts, Fact 119. It does seem inconsistent to me with the local Rule 56.1 that allows the opposing party, the non-movement, to submit uncontested facts, and Judge Ellis' procedure seems to prohibit that. It does not, Your Honor. As the procedure provides for and as it happened in this case, the moving party drafts a statement of facts. The opposing party then responds to that statement of facts and adds their own statement of facts, and then the two parties get together and put it together. Where do you get that the opposing party gets to add their own statement of undisputed facts? The opposing party, you write it together. So what happens in this case, Your Honor, is that Union Pacific drafted a statement of facts. But that's not the way the local rule works. Local rule has the movement submit the undisputed facts, and then the non-movement gets to submit opposing undisputed facts, right? Exactly, Your Honor. What local rule provides for is that the moving party files their statement of facts, and then the opposing party responds to that statement and adds up to 40 additional.  is prevented from showing that what actually happened is Union Pacific sent a proposed statement of facts. Plaintiff then redlined it and responded and added his additional facts, and then the parties put the statement together. All this process does is it requires that the parties can only cite information that is supported in the record. Nevertheless, even if this court finds that procedure is inconsistent with the rules. Well, it's typical then that you jointly submit an agreed statement of facts, and then you can, in addition to that, then there's another paragraph or whatever that sets out what you think are not agreed statements, agreed facts. If there are facts the parties are unable to agree to, the procedure provides for a motion being brought before the court, and if the court finds that you don't have an adequate basis for objecting to those statements, then they can sanction you. But so there is a process by which. In Judge Ellis's rule, it says the parties may not file, and the court will not consider separate statements of undisputed facts. That is correct. How can you say that's consistent with the local rule that says the non-movement can? Your Honor, it's consistent because when they file the joint statement of facts, in that joint statement of facts are both parties' facts. Any affidavits that Plaintiff wanted to file, he could have. However, in this case. We're not communicating. It seems inconsistent. Your Honor, even if it is inconsistent, which as the way the process worked in this case, which happened without any evidence being in the record to show, Plaintiff was granted leave to file the five additional facts he believed he needed to file. The court granted him leave to do that. A agreed joint statement was filed again, and the court cited one of those five additional facts in its opinion and order. However, this court now has had the opportunity to read the briefs, to read the record, and look at all the evidence, and Plaintiff has been granted a de novo review. There is not a single fact he thinks that this court needs to weigh the evidence and to make a determination that he's been prevented from bringing before you. So whether or not the procedure was consistent does not change the outcome of this case because there's been no prejudice to Plaintiff as there's been no error in this case. Unless Your Honors have any more questions, I thank you for your time. I think that's it. Thank you. How much time? You have four minutes, Counsel. The FELA case is repetitive trauma. The Tolson case, the woman fell three times, injured her knee. It took her forever to finally, it was obvious that it was work-related back when. In the record, the additional statement of facts, we have the Plaintiff testifying that he thought it was sore muscles. That was just poo-pooed by the lower court. I don't know what else to say on that except that he thought it was, because it's heavy work, he thought it was sore muscles, and then when it got worse, he tells his boss and he says, I've got to go to the doctor. I don't know how much more reasonable he can be. The racial discrimination, we have the railroad saying it's just a form letter we send out that is based on your background investigation. But we have them admit it in an answer to our complaint that they denied him the position because of his background investigation. Then all of a sudden they go, oh, geez, that's contrary to Illinois law. You can't make an employment decision based on someone's arrest, maybe a conviction, but not an arrest, so it's because he lied. But then again you've got the head guy for the police department from that region saying ask it a different way so that you know that he's not confused. They asked it a different way and he fessed up to it. He doesn't get the job. Other people that wrote down that they were never convicted of a felony or a misdemeanor, they get a pass at the interview. Tell me that's not special treatment. As the defendant said about drafting the statement of facts, everybody puts this is what this says and they put their spin on it. I get these 115 of them or whatever, and I'm going through them, and I go, well, yeah, it kind of says that. But then you've got the judge saying if you don't agree, and I find that that's what the statement is, you're going to get sanctioned. I'm going to toss your brief. I'm going to admit all these statement of facts. So what am I supposed to do when this judge is deciding this motion for summary judgment? Am I supposed to tell the judge this is not according to local rule 56.1? I don't think so. I'm between a rock and a hard place, and I think that based on other cases the appellate court can look at this and send it back down and say, hey, follow rule 83. Thank you. Thank you, counsel. Thanks to both counsel. Case is taken under advisement.